**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MATTHEW WALKER, <br><br> Plaintiff, <br><br> v. <br><br> DSP GROUP, INC., SHIRA FAYANS BIRENBAUM, OFER ELYAKIM, THOMAS A. LACEY, CYNTHIA L. PAUL, YAIR SEROUSSI, NORMAN P. TAFFE, and KENNETH H. TRAUB, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Matthew Walker ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against DSP Group, Inc. ("DSP Group" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Synaptics Incorporated ("Synaptics") will acquire the Company through its subsidiary Osprey Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On August 30, 2021, DSP Group and Synaptics announced their entry into an

---

[1] Non-party Synaptics is a global developer and supplier of custom-designed semiconductor solutions. Its current served markets include Internet of Things ("IoT") personal computer ("PC"), and Mobile. Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Synaptic.

Agreement and Plan of Merger dated the same day (the "Merger Agreement"). That agreement provides DSP Group stockholders will receive $22.00 in cash for each share of Company common stock they own (the "Merger Consideration").[2]

3. On October 25, 2021, DSP Group filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that DSP Group stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

---

[2] The approximate value of the Proposed Transaction is $532 million.

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## **THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of DSP Group.

10. Defendant DSP Group is a Delaware corporation, with its principal executive offices located at 2055 Gateway Place, Suite 480, San Jose, California 95110. The Company is a global leader in wireless chipsets for a wide range of smart-enabled devices. DSP's common stock trades on The Nasdaq Global Select Market under the ticker symbol "DSPG."

11. Defendant Shira Fayans Birenbaum ("Birenbaum") is and has been a director of the Company since April 2021.

12. Defendant Ofer Elyakim ("Elyakim") is and has been Chief Executive Officer ("CEO") of the Company since July 2009, and a director since May 2011.

13. Defendant Thomas A. Lacey ("Lacey") is and has been a director of the Company since May 2012.

14. Defendant Cynthia L. Paul ("Paul") is and has been a director of the Company since April 2018.

15. Defendant Yair Seroussi ("Seroussi") is and has been a director of the Company since February 2002.

16. Defendant Norman P. Taffe ("Taffe") is and has been a director of the Company since May 2013.

17. Defendant Kenneth H. Traub ("Traub") has been non-executive Chairman since May 2017, and a director of the Company since May 2012.

18.     Defendants identified in paragraphs 11-17 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19.     On August 30, 2021, DSP Group and Synaptics jointly announced in relevant part:

SAN JOSE, Calif., Aug. 30, 2021 (GLOBE NEWSWIRE) -- Synaptics Incorporated (Nasdaq: SYNA) and DSP Group, Inc. (Nasdaq: DSPG) today announced the signing of a definitive agreement, unanimously approved by the boards of directors of both companies, whereby Synaptics acquires DSP Group, a leading global provider of voice and wireless chipset solutions for converged communications, at $22.00 per share in an all-cash transaction. The combination is anticipated to generate annual run rate synergies of $30 million for the new entity to be realized within 12 months of closing and is immediately accretive to Synaptics' non-GAAP earnings. The transaction is expected to be financed through a combination of cash on hand and a fully committed, incremental debt financing arrangement with a projected close by the end of calendar year 2021, subject to DSP Group shareholder approval and customary closing conditions.

DSP Group has leadership positions across multiple markets in the Internet of Audio Things (IoAT) with significant growth opportunities in low power SmartVoice, unified communications & collaboration, and wireless IoT devices. Most of these solutions are quite relevant to Synaptics' existing customer base, furthering the strategy of cross-selling portfolio devices.

Synaptics recently announced its Low Power Edge AI initiative, which opens a significant long-term opportunity with ABI research predicting approximately 2.5 billion TinyML units to be sold by 2030. The addition of DSP Group's best-in-class SmartVoice products to Synaptics' Katana smart vision platform creates a complete portfolio that can both serve existing customer needs and address the significant future market. In addition, the combination further strengthens Synaptics' industry-leading wireless connectivity portfolio by adding DECT Ultra Low Energy (ULE), which enables a fully-featured intelligent home security solution.

"We continue to invest in technologies that tilt our product mix toward IoT applications," said Michael Hurlston, President and CEO of Synaptics. "DSP Group's expertise in SmartVoice and ULE wireless solutions, coupled with Synaptics' leadership position in far-field speech recognition and IoT directed Wi-Fi/BT combos enables us to deliver increasingly differentiated solutions to our combined customer base, while positioning us to lead the transition to AI enabled devices at the edge of the network."

"We are excited to join forces with Synaptics, a recognized leader in products for IoT. This combination provides a great result for our shareholders who have supported us

through this journey, delivering meaningful and certain value," said Ofer Elyakim, CEO of DSP Group.  "Our complementary portfolios together with the combination of our world-class engineering teams creates an exciting opportunity for DSP Group's core technology to extend further into our existing customers' product portfolio."

"The DSP Group board of directors unanimously supports this transaction as it represents an excellent outcome for our shareholders," commented Ken Traub, Chairman of the Board of Directors, DSP Group.  "We would like to thank DSP Group's management and employees for their dedication to executing our strategy and congratulate them on this exciting achievement."

Advisors

Goodwin Procter LLP is serving as legal counsel and Barclays is providing committed financing to Synaptics.  Goldman Sachs & Co. LLC is serving as financial advisor and Morrison & Foerster LLP is serving as legal counsel to DSP Group.

**The Proxy Statement Contains Material Misstatements or Omissions**

20.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to DSP Group's stockholders.  The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

21.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's financial projections and the valuation analyses underlying the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs").

*Material Omissions Concerning the Company's Projections and the Financial Analyses Relied on by the Board*

22.     The Proxy Statement omits material information regarding the Company's financial projections, including disclosure of all underlying line items.

23.     The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Goldman Sachs.

5

24. The Proxy Statement describes Goldman Sachs's fairness opinion and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Goldman Sachs's work. As a result, DSP Group stockholders cannot assess what significance to place on Goldman Sachs's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

25. With respect to Goldman Sachs's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) the inputs and assumptions underlying the range of discount rates utilized by Goldman Sachs in connection with the analysis; (c) the inputs and assumptions underlying the range of perpetuity growth rates utilized by Goldman Sachs in connection with the analysis; and (d) the Company's net cash.

26. With respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose (a) the inputs and assumptions underlying the discount rate utilized by Goldman Sachs in connection with that analysis; (b) Goldman Sachs' basis for selecting the particular revenue multiples utilized in connection with the analysis; (c) the Company's net cash as utilized by Goldman Sachs in connection with the analysis; and (d) the number of fully diluted shares of Company stock as utilized by Goldman Sachs in connection with the analysis.

27. With respect to Goldman Sachs' *Selected Companies Analysis*, the Proxy Statement fails to include the individual multiples and financial metrics for the comparable companies.

28. The omission of this information renders the statements in the "Certain Company Forecasts" and "Opinion of the Company's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act. Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses

must also be fairly disclosed.

29. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other DSP Group stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

30. Plaintiff repeats all previous allegations as if set forth in full.

31. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

32. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

33. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

34. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

35. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

36. Plaintiff repeats all previous allegations as if set forth in full.

37. The Individual Defendants acted as controlling persons of DSP Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of DSP Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

40. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

41. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, DSP Group's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of DSP Group, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to DSP Group stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it

and setting it aside or awarding rescissory damages to Plaintiff;

      C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 5, 2021              **LONG LAW, LLC**

By  */s/ Brian D. Long*
     Brian D. Long (#4347)
     3828 Kennett Pike, Suite 208
     Wilmington, DE 19807
     Telephone: (302) 729-9100
     Email: BDLong@longlawde.com

     *Attorneys for Plaintiff*